UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ZELMA RIVAS,

                              Plaintiff,                1:16-cv-01031 (BKS/DJS)

v.

NEW YORK STATE LOTTERY,

                              Defendant.
_____

**Appearances:**

Zelma Rivas, Pro se
Clifton Park, NY 12065

Eric T. Schneiderman
Attorney General of the State of New York
Joshua E. McMahon
Assistant Attorney General
The Capitol
Albany, NY 12224
For Defendant

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

      Plaintiff Zelma Rivas, who is black and of Hispanic origin, brings this action pro se against Defendant New York State Lottery. (Dkt. No. 1; Dkt. No. 22-1, at 53). Plaintiff alleges that Defendant terminated her employment, failed to promote her, subjected her to unequal terms and conditions of employment and a hostile work environment on the basis of her race or color and national origin, and retaliated against her in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17.[1] (Dkt. No. 1, at 2). Presently before the Court is Defendant's motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 19). Plaintiff opposes Defendant's motion to dismiss. (Dkt. Nos. 22, 23). For the following reasons, Defendant's motion is granted.

## II.  BACKGROUND[2]

### A.  Employment at NYS Lottery

According to the Complaint, Plaintiff began working for the State of New York in 1981, and in 1995 began working for Defendant New York State Lottery (the "NYS Lottery"). (Dkt. No. 1, at 6). Within three months of beginning work with the NYS Lottery, she was called a derogatory name. (Dkt. No. 1, at 6). In 1996, Plaintiff filed a complaint with the Civil Service Employees Association regarding that event, as well as generalized "discrimination and workplace bullying" by the NYS Lottery management and employees. (*Id.*). After filing this complaint, Plaintiff's "work was denounced and the NYS Lottery management began a relentless pursuit after" her. (*Id.*). According to Plaintiff, NYS Lottery employees, on multiple occasions, poured a clear liquid substance into her coffee shortly after the 1996 complaint. (*Id.*). Plaintiff was subsequently moved to a different unit, in close proximity to the NYS Lottery Director. (*Id.* at 6–7). At Plaintiff's new location, she was harassed, stalked, and discriminated against. (*Id.* at 7). At one point, from 1998 to 2000, Plaintiff was relocated to a booth on the ground floor of Defendant's building and was denied access to any of the floors belonging to Defendant. (*Id.* at 9). Plaintiff was forced to perform her work in isolation and when she completed an assignment Plaintiff would leave it on the security counter and call up to Defendant's offices for someone to

---

[1] Plaintiff only cites violations of Title VIII and Title VI of the Civil Rights Act of 1964 in her causes of action. However, Plaintiff indicates that her action is brought pursuant to "Title VII of the Civil Rights Act of 1964" on page two of her Complaint. The Court will consider Plaintiff's claims to be brought pursuant to Title VII for the purposes of this action.
[2] The facts are taken from Plaintiff's Complaint and attachments. Plaintiff's factual allegations are presumed to be true for the purpose of this motion.

pick up the work.  (*Id.*).  During this period of isolation, Plaintiff was instructed by NYS Lottery management not to speak to any employees or visitors.  (*Id.*).  Plaintiff was also denied job posting announcements and union membership benefits during her isolation, although she was paying union dues.  (*Id.* at 12).

Referenced in the Complaint and attachments is Plaintiff's previous action against Defendant and others alleging, inter alia, that the defendants racially discriminated against her by failing to promote her in violation of Title VII; that action was dismissed and judgment entered for the defendants in March 2002.  *Rivas v. N.Y. State Lottery* ("*Rivas I*"), No. 00-cv-746, Dkt. No. 58 (N.D.N.Y. Mar. 26, 2002), *aff'd*, *Rivas v. N.Y. State Lottery*, 53 F. App'x 176 (2d Cir. 2002).  Roger W. Kinsey, an assistant attorney general ("AAG"), represented the state defendants in that case.  (*Id.*; *see also* Dkt. No. 1, at 15 (discussing Kinsey's February 2001 deposition of Plaintiff)).  Plaintiff alleges that Kinsey "discriminated against [her] and sanctioned the NYS Lottery's decision to deprive [her] of employment opportunities because of [her] status as a minority, a member of the protected class."  (Dkt. No. 1, at 12).

From 2000 to 2010, NYS Lottery management allegedly subjected Plaintiff and her family to harassment, stalking, threats, and intimidation.  (Dkt. No. 1, at 7–8).  In November 2003, Plaintiff sent a memorandum to the NYS Lottery Director complaining that she was retaliated against and harassed by a supervisor, who called her "incompetent and insubordinate" and accused her of refusing to "speak with a Hispanic lottery customer" even though Plaintiff was "Spanish" and could "speak fluently."  (*Id*. at 23).  In February 2004, three months after the memorandum, Plaintiff was placed on administrative leave pending a mental health evaluation.  (*Id.*).

3

From 2004 to 2010, Plaintiff maintains that, every time she complained about "discrimination, harassment, intimidation, [or] workplace bullying," she was escorted out of her workplace and sent to be examined by medical professionals, and each time Plaintiff was found fit to perform her employment duties. (*Id.* at 24). Plaintiff alleges she was denied a promotion solely because of her "status as a minority, a member of the protected class." (*Id.* at 31). During this time period, Plaintiff "filed several Complaints with the Division of Human Rights, [U.S. Equal Employment Opportunity Commission ('EEOC')] and the Federal Courts." (*Id.* at 25). Plaintiff also wrote multiple letters detailing her complaints of discrimination to New York State Governors and the U.S. Department of Justice, in addition to submitting complaints to multiple other government entities. (*Id.* at 26, 39–40).

In September 2010, Plaintiff and Defendant entered arbitration after Defendant charged Plaintiff with misconduct and insubordination stemming from, among other things, Plaintiff's alleged failure to participate in an interrogation. (*Id.* at 26; Dkt. 1-6, at 2–3). According to the Complaint, at the arbitration proceeding, a NYS Lottery attorney suppressed information relating to Plaintiff's job performance and the multiple complaints Plaintiff submitted to Defendant and the Governor of New York about the harassment and discrimination Plaintiff endured throughout her employment. (Dkt. No. 1, at 40). In an Opinion and Award entered on November 29, 2010, the arbitrator found Plaintiff guilty of three of the four charges and imposed the penalty of termination of employment, effective October 18, 2010. (Dkt. No. 1-6, at 21).

Following her termination, Plaintiff litigated before the Unemployment Insurance Appeal Board, which found that there was "no evidence that the claimant was aware that her failure to cooperate in the interrogation would be grounds for dismissal" and concluded that Plaintiff's

"actions [did] not rise to the level of misconduct under the Unemployment Insurance Law." (Dkt. No. 1, at 33).

### B.     Post-NYS Lottery Employment

From July 2010 to March 2011, Plaintiff worked in a temporary position for the New York State Department of Health, HIV, AIDS Institute. (Dkt. No. 1, at 44). Plaintiff claims that she "complained about the years of discrimination" that she was "forced to endure in the NYS Lottery and . . . participated in employment discrimination proceedings," and Kinsey, the AAG who represented Defendant in Plaintiff's prior case, retaliated against her and "pursued" her at the Department of Health. (*Id*.). Plaintiff asserts that Kinsey "engaged employees" at the Department of Health to "stalk [Plaintiff] to the ladies room, on [her] break, on [her] lunch throughout the day, on a daily basis." (*Id*.). The Department of Health offered other temporary employees permanent positions, but not Plaintiff. (*Id*.).

In August 2011, Plaintiff "applied for an Administrative Assistant position with Homeland Security, FEMA." (Dkt. No. 1, at 44). The employees who interviewed Plaintiff in September 2011 hired her "on the spot." (*Id*.). When Plaintiff arrived in human resources, Plaintiff was told that she "was never supposed to be hired." (*Id*.). Plaintiff "immediately called the NYS Inspector General's Office and explained that the New York State Attorney General's Office and Defendant "were relentlessly pursuing [Plaintiff], monitoring [her movements . . . harassing [her] and [her] family and meticulously thwarting [her] efforts to obtain employment." (*Id*.). Plaintiff claims Kinsey "blacklisted" her. (*Id*. at 45).

In September 2011, Plaintiff was assigned by an employment agency "to work a claims position with M & T Bank." (Dkt. No. 1, at 45). Kinsey "engaged employees" at the Department of Health to "stalk [Plaintiff] to the ladies room, on [her] break, on [her] lunch throughout the day, on a daily basis." (*Id*.). These employees made Plaintiff "a target of daily

5

stalking, relentless . . . workplace bullying, ridicule, intimidation, [and] harassment." (*Id.*). On October 30, 2011 and November 3, 2011, Plaintiff contacted the employment agency and told a representative that she "was being stalked" and was enduring "workplace bullying" at M & T Bank. (*Id.*). Plaintiff also complained to the NYS Inspector General's Office and the "M & T Bank Whistleblower Hotline." (*Id.*). On November 4, 2011, Plaintiff "was forced to leave M & T Bank." (*Id.*).

On April 10, 2012, Snelling Personnel Services Agency assigned Plaintiff to work for Value Options. (Dkt. No. 1, at 45). Kinsey "engaged employees" at Value Options to "stalk [Plaintiff] to the ladies room, on [her] break, on [her] lunch throughout the day, on a daily basis." (*Id.*). These employees made Plaintiff "a target of daily stalking, relentless . . . workplace bullying, ridicule, intimidation, [and] harassment." (*Id.*). As a result, Plaintiff "was forced to leave Value Options." (*Id.*).

In June 2012, Manpower Employment Agency assigned Plaintiff to work for Lexis Nexis as an editorial assistant. (Dkt. No. 1, at 46). Kinsey "engaged employees" at Lexis Nexis to "stalk [Plaintiff] to the ladies room, on [her] break, on [her] lunch throughout the day, on a daily basis." (*Id.*). These employees made Plaintiff "a target of daily stalking, relentless . . . workplace bullying, ridicule, intimidation, [and] harassment." (*Id.*). Plaintiff "remained at Lexis Nexis until August 31, 2012." (*Id.*).

Plaintiff began working from the NYS Office of Temporary and Disability Assistance ("OTDA") in December 2012. (Dkt. No. 1, at 46). Kinsey "engaged employees" at OTDA to "stalk [Plaintiff] to the ladies room, on [her] break, on [her] lunch throughout the day, on a daily basis." (*Id.*). These employees made Plaintiff "a target of daily stalking, relentless . . . workplace bullying, ridicule, intimidation, [and] harassment." (*Id.*). On January 17, 2014,

Plaintiff complained to Jessica Vaughn, an OTDA affirmative action officer, that she was being stalked and subjected to workplace bullying. (*Id*.). Vaughn told Plaintiff that "in her investigation she found out [Plaintiff] was being harassed and bullied by employees on the 15th floor." (*Id*. at 46). The next week, Plaintiff had a meeting with Eleanor Cowan, who was "OTDA personnel." (*Id*.). Cowan asked Plaintiff "for the names of the employees involved in the workplace bullying." (*Id*.). Plaintiff responded that "employees of all grades and titles were involved" but did not provide the names of the employees because she "was not yet permanent" and believed that Kinsey "would use the situation as an opportunity to have [her] terminated." (*Id*.). "Cowan conferred with the Personnel Director and told me the Personnel Director said they would not assist [Plaintiff] unless [she] provided the names of the employees involved," which Plaintiff declined to do because she was concerned that Kinsey would "use [her] complaint to have [her] fired." (*Id*. at 50). On January 12 and 13, 2015 and May 20, 2015, Plaintiff complained to the NYS Inspector General's Office about the harassment, and workplace bullying. (*Id*. at 46). For "some time" after her May 20, 2015 complaint, Plaintiff "stopped using the ladies room bathroom on the 15th floor and started using the ladies room bathrooms on other floors." (*Id*. at 51). Kinsey, however, had Plaintiff's "movements meticulously monitored" and she was "stalked when she use[d] the ladies room on other floors." (*Id*.).

On May 13, 2015, an Associate Personnel Director for OTDA told Plaintiff that an employee who worked on the 15th floor "reported to her that [Plaintiff] closed the elevator in her face." (*Id*.). Plaintiff asserted that it was "very upsetting to be falsely accused especially given the dangerously painful workplace bullying [she] was forced to endure on the 15th floor." (*Id*. at 50).

Under the heading "October, 2015," the Complaint alleges that Kinsey had Plaintiff "stalked and pursued in [her] present employment" at OTDA. (*Id.* at 49). Plaintiff asserts that Kinsey continued to have her "stalked, discriminated against, harassed, blacklisted, targeted and meticulously with precision sabotages [Plaintiff's] efforts to concentrate on work and frustrates [her] efforts to remain employed." (*Id.*).

On May 5, 2016, Plaintiff filed an EEOC charge of discrimination against Defendant alleging retaliation and that the "discrimination took place" between December 1, 2012 and January 28, 2016. (Dkt. No. 1-1, at 4). In it, Plaintiff alleges:

> I worked from the Respondent from on or about 1995 to 2010
>
> When I was employed by the Respondent I protested employment practices and policies that were prohibited by employment discrimination statutes.
>
> Since on or about December 2012, I believe that the Respondent has been retaliating against me by engaging a third governmental entity to stalk and bully me at my new place of employment.
>
> I believe I am being subjected to these actions in willful violation of Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. No. 1-1, at 4). On or about May 24, 2016, the EEOC issued a right-to-sue letter. (Dkt. No. 1-1, at 3). Plaintiff commenced this action on August 23, 2016.

In her First Cause of Action, Plaintiff alleges that Defendant discriminated against her throughout her employment at the NYS Lottery. (Dkt. No. 1, at 52). In her Second Cause of Action, Plaintiff alleges that, ever since she "filed a complaint with the Defendant," Defendant "began relentlessly pursuing" her, and that Kinsey "condoned the actions of the Defendants and participated in the harassment on the basis of her status as a minority," permanently impacting her "working conditions" at the OTDA, her current place of employment. (*Id.* at 53). In her Third Cause of Action, Plaintiff alleges that, in retaliation for her complaints of race

8

discrimination, Defendant continues to stalk and harass her. (*Id.*). Additionally, Plaintiff alleges that Defendant has "stalked and pursued her children near her residence." (*Id.*). In her Fourth Cause of Action, Plaintiff alleges that Defendant, through Kinsey, created a hostile work environment at the Department of Health, M & T Bank, Value Options, Lexis Nexis, and OTDA, in retaliation for her complaints of race discrimination, and interfered with her hiring at Homeland Security. (*Id.* at 55–56).

### III.  STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has been filed pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

### IV.  DISCUSSION

Defendant seeks dismissal of the Complaint, which alleges four causes of action for discrimination and retaliation in violation of Title VII, on the grounds that: (1) the Complaint is untimely; (2) Plaintiff's charge to the EEOC was untimely; (3) Plaintiff failed to exhaust her

9

administrative remedies; and (4) the Complaint fails to state a prima facie case of retaliation. (Dkt. Nos. 1, 19, 19-1).

### A.     90-Day Filing Deadline

Defendant asserts that the Complaint is untimely because Plaintiff failed to file it within 90 days of her receipt of the EEOC's right-to-sue letter. "In order to be timely, a claim under [Title VII] must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (citing 42 U.S.C. § 2000e-5(f)(1)). "There is a . . . presumption that a mailed document is received three days after its mailing." *Id*. Here, the EEOC right-to-sue letter is dated May 24, 2016; thus, adding three days for mailing,[3] to be timely, the Complaint must have been filed on or before August 25, 2016. As Plaintiff commenced this action on August 23, 2016, (Dkt. No. 1, at 1; Dkt. No. 1-1, at 1), the Complaint is timely.

### B.     Exhaustion of Administrative Remedies

Defendant seeks dismissal on the basis that Plaintiff failed to timely exhaust her administrative remedies. "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)); *see also* 42 U.S.C. § 2000e-5(e), (f). "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within . . . 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–5(e)(1)). The Title VII exhaustion requirements, and their filing deadlines, operate as

---

[3] Plaintiff asserts that she received the right to sue letter on May 28, 2016. (Dkt. No. 22, at 6). If the Court credits this assertion, Plaintiff had until August 26, 2016 to file a complaint.

an affirmative defense. *Hardaway*, 879 F.3d at 491. "[T]he burden of pleading and proving Title VII exhaustion" therefore "lies with defendants." *Id*.

"Statute of limitations defenses are affirmative defenses, which normally cannot be decided on a motion to dismiss." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). Additionally, "filing a timely charge of discrimination with the EEOC is . . . a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Dismissal may be appropriate, however, "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" *In re S. African Apartheid Litig.*, 617 F. Supp. 2d at 287.

Plaintiff filed her EEOC charge on May 5, 2016. (Dkt. No. 1-1, at 4). To be timely, therefore, the alleged discriminatory acts must have taken place within the 300-day time period preceding May 5, 2016. In other words, they must have occurred on or after July 10, 2015. Plaintiff's employment with Defendant ended, at the latest, on November 29, 2010. Plaintiff filed her EEOC charge more than 1,900 days after her termination; therefore, all acts that occurred during her employment at the NYS Lottery, including the alleged discriminatory failure to promote, unequal terms and conditions of employment, and hostile work environment, are time-barred. Further, Plaintiff does not contend, nor do her submissions suggest, that equitable tolling, waiver, or estoppel would excuse the untimely filing in this case. Plaintiff contends instead that the continuing violation doctrine provides a basis for finding "all acts and incidents of discrimination, retaliation, and hostile work environment" claims timely. (Dkt. No. 22, at 7).

"It has been the law of this Circuit that '[u]nder the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any

11

incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.'" *Chin v. Port Auth.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011)). "To trigger such a delay, the plaintiff 'must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.'" *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

### 1. Retaliation

The Complaint alleges one incident of retaliation after July 10, 2015; Plaintiff alleges that in "October, 2015," Kinsey had Plaintiff "stalked and pursued in [her] present employment" at OTDA, and "continues to have her . . . discriminated against, harassed, blacklisted, targeted and meticulously with precision sabotages [Plaintiff's] efforts to concentrate on work and frustrates [her] efforts to remain employed" in retaliation for her complaints of race discrimination. (Dkt. No. 1, at 49). Plaintiff argues that this timely act renders all of her retaliation claims timely. This includes allegations that during her July 2010 to March 2011 employment at the Department of Health, Kinsey retaliated against her for her previous complaints of discrimination at the NYS Lottery, by engaging employees at the Department of Health to stalk, harass, intimidate, and bully her. (*Id.*). In August 2011, Plaintiff was offered a position with "Homeland Security, FEMA," but because Kinsey had "blacklisted" her, the offer was immediately withdrawn. (*Id*. at 44–45). From September 2011 to November 2011, Plaintiff worked at M & T Bank, where employees, at Kinsey's instruction, stalked, bullied, harassed, and intimidated Plaintiff. (*Id*. at 45). In October and November 2011, Plaintiff complained to her employment agency, the NYS Inspector General's Office, and M & T Bank, but was forced to

12

leave her employment on November 4, 2011. (*Id*.). Plaintiff experienced the same sort of harassment at Lexis Nexis, where she worked from June to August 2012. (*Id*. at 46). After Plaintiff began her employment with OTDA in December 2012, Kinsey engaged employees OTDA employees to stalk, intimidate, and harass Plaintiff. (*Id*.). In January 2014, Plaintiff complained to the OTDA affirmative action officer and personnel director about "workplace bullying" but did not want to identify the involved employees because she feared Kinsey would have her fired. (*Id.* at 50). Plaintiff complained to the NYS Inspector General's Office about the harassment and workplace bullying in January and May 2015. (*Id*. at 46). Plaintiff alleges that in October 2015, Kinsey continued to "have her stalked, discriminated against [and] blacklisted," but provides no specific factual allegations. (*Id.* at 49).

To the extent Plaintiff alleges Kinsey engaged in these actions in retaliation for her filing *Rivas I* in 2000 and complaining about discrimination to Defendant, her subsequent employers, and others, the alleged acts are discrete and, even if Kinsey undertook them pursuant to a general policy, do not extend the limitations period. Indeed, the majority of the incidents were separated by many months and occurred at different places of governmental and private employment. There is, therefore, no plausible basis for applying the continuing violation doctrine to the discrete acts of discrimination or retaliation alleged in this case. *Chin*, 685 F.3d at 157 ("Discrete acts . . . which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."). Accordingly, Defendant's motion to dismiss all discrete acts of discrimination and retaliation—including allegations that Defendant failed to promote Plaintiff,

*see Chin*, 685 F.3d at 157 ("[A]n employer's failure to promote is by its very nature a discrete act.")—occurring prior to July 10, 2015, is granted.[4]

### 2. Hostile Work Environment

Plaintiff further alleges that she was subject to a hostile work environment at each of her five places of employment, including at OTDA, where it continued into the 300-day limitations period. "The 'continuing violation' doctrine extends the 300 day filing period in cases alleging a hostile work environment because '[h]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.'" *Szuszkiewicz v. JPMorgan Chase Bank*, 12 F. Supp. 3d 330, 338 (E.D.N.Y. 2014).

Assuming the continuing violation doctrine applies in this case, and extends the filing period to claims of hostile work environments at five different employers, as Defendant notes, the Complaint "does not contain a single allegation of an unlawful employment practice . . . taken *by Defendant*" after Plaintiff's termination in 2010. (Dkt. No. 19-1, at 6 n.3 (emphasis added)). Under Title VII, "[f]or an employer to be held liable for a hostile work environment, the plaintiff must demonstrate either that 'a supervisor used his or her authority to further the creation of a discriminatorily abusive working environment, or that the employer knew or reasonably should have known about harassment by non-supervisory co-workers, yet failed to take appropriate remedial action.'" *Ward v. Shaddock*, No. 14-cv-7660, 2016 WL 4371752, at *9, 2016 U.S. Dist. LEXIS 106438, at *32 (S.D.N.Y. Aug. 11, 2016) (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014)). The Complaint does not allege that Kinsey was, at any point, Defendant's employee, and contains no allegations connecting Kinsey to Defendant, other than Kinsey's representation of Defendant in 2000 in *Rivas I*. Nor are there any allegations suggesting that Kinsey, as an AAG, had the authority to alter Plaintiff's

---

[4] As Plaintiff has not alleged any facts in support of her unequal terms and conditions claim, it is dismissed.

employment status with any of Plaintiff's governmental or private employers or that Defendant had any ability to control Plaintiff's working conditions once she left its employ. *See Ward v. Shaddock*, No. 14-cv-7660, 2016 WL 4371752, at *10, 2016 U.S. Dist. LEXIS 106438, at *37 (granting motion to dismiss hostile work environment claim, explaining that liability may be imputed to an employer "only if it were 'negligent in controlling working conditions'" and the complaint "failed to plausibly allege vicarious liability for" the other employee's actions or the employer's "negligence in allowing the hostile workplace environment to persist" (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013))); *see also Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 460 (S.D.N.Y. 2013) (concluding that an individual did not qualify as a supervisor under *Vance* because the plaintiff failed to "allege[ ] any facts suggesting . . . that he had the authority to significantly change Plaintiff's employment status" (internal quotation marks omitted)), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 Fed. App'x 15 (2d Cir. 2014).

### C.     Retaliation

The Complaint arguably alleges a single timely claim of retaliation. Plaintiff contends that, in October 2015, in retaliation for her complaints of race discrimination, Defendant, through Kinsey, harassed her continually after she left the NYS Lottery by creating hostile work environments at her subsequent jobs and "blacklisting" her in order to hinder her efforts to secure employment. In some instances, an employer's post-employment conduct toward a former employee may fall within the scope of Title VII. "A negative reference or similar actions taken with respect to a new prospective employer can be considered an adverse action and therefore provide support for a retaliation claim." *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16-cv-01940, 2017 WL 4273292, at *5, 2017 U.S. Dist. LEXIS 157346, at *13–14 (D. Conn. Sept. 26, 2017); *see also Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979) (post-employment blacklisting falls within the scope of retaliatory provisions of Title VII), *rev'd on*

*other grounds*, 477 U.S. 807, 814 n.17 (1980); *Patchenko v. C.B. Dolge Co., Inc.*, 581 F.2d 1052, 1055 (2d Cir. 1978) (finding that Title VII "prohibits discrimination related to or arising out of an employment relationship, whether or not the person discriminated against is an employee at the time of the discriminatory conduct"); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ("[P]laintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation.").

For a Title VII retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against h[er], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). To plead causation, the plaintiff must allege that the retaliation was the "but-for" cause of the employer's adverse action, i.e., that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id*. at 90–91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

Here, Plaintiff fails to allege facts from which a plausible inference could be drawn that Defendant—NYS Lottery—took an adverse employment action against Plaintiff. There is nothing in the Complaint alleging a connection between Kinsey and Defendant, other than his representation of Defendant in *Rivas I* approximately fifteen years ago. *Cf.*, *Diana v. Schlosser*, 20 F. Supp. 2d 348, 352 (D. Conn. 1998) (denying summary judgment in Title VII action where the defendant "had significant control over [the plaintiff's] ability to maintain a substantial employment opportunity, even though she was not an employee of" the defendant).

Accordingly, Plaintiff's retaliation claim, even if timely, fails to state a claim for relief that is plausible on its face.

## V. AMENDED COMPLAINT

While the Court is cognizant of Plaintiff's status as a pro se litigant, *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."), the Court concludes that an amendment of the employment discrimination claims in the Complaint would be futile as Plaintiff alleges no facts in any of her submissions suggesting a timely or viable claim against Defendant.

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 19) is **GRANTED** in its entirety; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk is directed to close this case.

**IT IS SO ORDERED**.

Dated: March 15, 2018

Brenda K. Sannes
U.S. District Judge